FILED
2019 Feb-15  AM 09:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| **VALIOLLAH GHOLAMKHAS,** | ) ) ) |  |
| **Plaintiff,** | ) ) |  |
| **v.** | ) ) | **CIVIL ACTION NO.** |
|  | ) ) |  |
| **MAT, INC.** | ) ) | _____ |
| **Defendant.** | ) ) |  |

## COMPLAINT

## I.   INTRODUCTION

COMES NOW Plaintiff, VALIOLLAH GHOLAMKHAS (hereinafter referred to as "Plaintiff"), by and through the undersigned counsel, and files this Title III, Americans with Disabilities Act (hereinafter referred to as the "ADA") action seeking injunctive relief, attorney's fees and costs. 42 U.S.C. §12181 *et seq.* (2018). In Count One of the Complain, Plaintiff seeks to enjoin Defendant MAT, INC. (D/B/A Shell Food Mart) (hereinafter referred to as the "Defendant") to remove architectural barriers. In Count Two of the Complaint, Plaintiff seeks to enjoin Defendant to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three of the Complaint, Plaintiff seeks to enjoin the Defendant's use of the

premises to provide full and equal enjoyment of the premises to the disabled. Counts Two and Three of the Complaint seek independent relief in addition to the removal of architectural barriers. Count Four of the Complaint seeks to enjoin Defendant's failure to design and construct the facilities to the ADA compliance.

## JURISDICTION, VENUE, PARTIES AND ARTICLE III STANDING

1. Because this is an action for declaratory and injunctive relief pursuant to Title III of the ADA, 42 U.S.C. §12181, *et seq*., and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in this Court, the United States District Court for the Northern District of Alabama, pursuant to 28 U.S.C. §1391 and the Local Rules of the United States District Court for the Northern District of Alabama.

3. Plaintiff is a resident and a citizen of Meridianville, Alabama, which is in the Northern District of Alabama. Plaintiff was declared disabled in 2016. He suffers from Spinal Osteoarthritis with sixteen (16) known places in the spine. Also, Plaintiff was diagnosed with Neuropathy of unknown origin and has been suffering from severe pain in his knees, arms and the bottom of his feet, and all of which restricted his ability to use his hands, arms and legs. He cannot walk and hold items in his hands

for even short periods of time. It is problematic for Plaintiff to move around independently without the use of a mobility aid like a cane, a walker, or a wheelchair. Therefore, Plaintiff is disabled pursuant to the ADA, in that he suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; 28 C.F.R. § 36.104.

4.  Defendant is a corporation that is both registered to conduct business and is conducting business within the State of Alabama sufficient to create both general and specific jurisdiction. Publicly available information provides Defendant operates and owns the facilities located at 2599 Sparkman Drive NW, Huntsville, AL 35805 (hereinafter referred to as the "Facility"), which is a retail food store at Shell gas station known as Shell Food Mart. *See* 42 U.S.C. § 12182(a). The retail store is the commercial facility in that it is intended for nonresidential use and affect commerce. 42 U.S.C. § 12181(2)(A). Accordingly, Defendant's retail store qualifies as a place of public accommodation. 42 U.S.C. § 12181(7).

5.  Substantially all the events or omissions occurred, and the real properties in question are located in the Northern District of Alabama. 42 U.S.C. § 1391(b)(2).

**6.** Plaintiff resides ten (10) minutes away from the Defendant's store, which is a convenient location for Plaintiff to fill up gas and shop for food and drinks at the retail store. Plaintiff enjoys the various types of beverages, snacks, gum and fast-food it has to offer; as well as the ATM conveniently located at the store. Plaintiff has been to Defendant's retail store on multiple occasions. Plaintiff will not only return to shop at Shell Food Mart within the next couple of weeks, but also to confirm compliance with the ADA by the Defendant. Plaintiff does not know exactly when he will go back to the Defendant's retail store because he has not planned every trip for the rest of his life. A specific planning is not necessary to invoke the ADA as such visitation may occur at the spur of the moment. *Segal v. Rickey's Restaurant and Lounge, Inc*., No. 11-61766-cn (S.D. Fla. Apr. 25, 2012); s*ee Parr v. L & L Drive Inn Rest.*, 96 F. Supp.2d 1065, 1079 (D. Haw. 2000). Nevertheless, Plaintiff is absolutely certain he will repeatedly return to the Defendant's store. Plaintiff will visit Shell Food Mart not only to shop for snacks and drinks, but also to verify Defendant repairs its Facility and addresses its non-compliant practices to become ADA compliant. Plaintiff will continue to do so in the future to ensure Defendant maintains its store to accessibility standards.

7.  Because of the barriers described in paragraph 21 and throughout this Complaint, Plaintiff has been denied full and equal enjoyment of the Defendant's Facility on the basis of his disability.

8.  Accordingly, Plaintiff has Article III standing to pursue this case because (1) he is a qualified disabled individual pursuant to the statutory and regulatory definition; (2) Defendant's establishment is a place of public accommodation pursuant to its statutory and regulatory definition; (3) Plaintiff suffered a concrete and particularized injury by being denied access to the establishment by architectural barriers, by being denied access by the Defendant's practices and procedures described throughout this Complaint, and by Defendant's denial of the use of the establishment for his full and equal enjoyment as the able-bodied individuals, as described throughout this Complaint, and (4) because of these injuries there exists a genuine threat of imminent future injury as described in paragraph 19 and throughout this Complaint.

## II.   PLAINTIFF'S CLAIMS
### ADA, Title III

9.  Plaintiff realleges and reincorporates all the allegations in Paragraphs 1 through 8 as fully stated herein.

10. On or about July 26, 1990, Congress enacted Title III of the ADA, 42 U.S.C. §12181 *et seq*. Commercial enterprises were provided one and a

half years from the enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. 42 U.S.C. §12181; 20 C.F.R. §36.508(A); *see* § 36.304.

11. Pursuant to the ADA, the Defendant's establishment is a place of public accommodation in that it is a retail store offering food, beverages, snacks, tobacco and other products to the public.  42 U.S.C. § 12181(7); 28 C.F.R. § 36.104. Accordingly, they are covered by the ADA and must comply with the Act.

**COUNT ONE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(iv)**
***(Architectural Barriers)***

**Defendant's Facility Is Subject to the 2010 ADA Design Standards for the Portions of the Facilities Addressed in this Complaint**

12. Upon information and belief based on publicly available information, the establishment in which the Shell Food Mart store is located was first constructed into Shell Food Mart in May 2013.

13. Upon further information and belief based on publicly available information, alterations and/or improvements were made to the retail store after May 2013.

14. The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an existing facility, such that those

facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All alterations made to existing facilities after January 26, 1992, and all new construction after January 26, 1993, must be readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. 42 U.S.C. § 12183(a); (b). 28 C.F.R. § 36.402. "Readily accessible to and usable by. . ." is the new construction standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the new construction standards is if the design and construction of the building to be readily accessible and usable is structurally impracticable. 42 U.S.C. § 12183(a)(1). The structural impracticability defense applies only in rare circumstances of extraordinary terrain. 28 C.F.R. § 36.401(c). "Readily accessible to and usable by. . ." is also the alterations standard. 42 U.S.C. § 12183(a)(2). An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 C.F.R. § 36.402(b).

15. New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010

Standards for Accessible Design. The Department's regulations establish whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply as follows: new construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 C.F.R. § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 C.F.R. § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March

15, 2012, or if no permit is required, if the start of physical construction

or alterations occurs on or after March 15, 2012. Where the facility does

not comply with the 1991 Standards, the 2010 Standards are applicable.

*See* 28 C.F.R. § 36.406(5)(ii) (stating "Newly constructed or altered

facilities or elements covered by §§ 36.401 or 36.402 that were

constructed or altered before March 15, 2012 and that do not comply

with the 1991 Standards shall, on or after March 15, 2012, be made

accessible in accordance with the 2010 Standards.")

16. For the architectural barriers at issue in this case, the 2010 Standards for

Accessible Design are applicable.

**Plaintiff's Concrete and Particularized Standing to Pursue an Injunction**

17. Defendant has discriminated and continues to discriminate against

Plaintiff and others who are similarly situated by denying full and equal

access to and full and equal enjoyment of the goods, services, facilities,

privileges, advantages and/or accommodations at Shell Food Mart in

derogation and in violation of Title III of the ADA. 42 U.S.C. §§ 12101

*et seq*., and 12182 *et seq*. As a new construction, the building must be

readily accessible to and usable by individuals with disabilities. 42

U.S.C. §§ 12183 (a) and (b).  Defendant's failure to remove the existing

barriers thus violates Title III of the ADA, which requires removal of

architectural barriers. 42 U.S.C. § 12182(b)(2)(A)(iv).

18. As described above, prior to the filing of this lawsuit, Plaintiff was denied full and equal access to all the benefits, accommodations, and services offered to individuals without disabilities within and about the Defendant's Facility. Plaintiff's access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the establishment in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against. *Wooden v. Board of Regents of Univ. Sys. Of Geo.,* 247 F. 3d 1262, 1284 (11th Cir. 2001); *Access Now, Inc. v. S. Fla. Stadium Corp.,* 161 F.Supp.2d 1357, 1364 (S. D. Fla. 2012).

19. Plaintiff has been to Shell Food Mart on at least three prior occasions and he has definite plans to return to shop at Shell Food Mart, even though the exact date is undetermined, to confirm compliance with the ADA by the Defendant and whether the Defendant has remediated its architectural barriers and has changed its practices and procedures. Additionally, of vital importance, the barriers are not just created by the construction issues and design, but rather many are created by human activities, from the way Defendant's workers at the facility use the

physical architectural elements of the establishment. The barriers created by human activity will need to be reviewed and maintained forever, to be sure Defendant's management and workers continuously act in a manner that does not create barriers. Absent remedial action by the Defendant, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendant on the basis of his disabilities. The Eleventh Circuit held that when architectural barriers have not been remedied, "there is a 100% likelihood that plaintiff . . .will suffer the alleged injury again when he returns to the store." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1336 (11th Cir. 2013). Additionally, "an alleged constitutional infringement will often alone constitute irreparable harm." *See KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271—72 (11th Cir. 2006) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (quoting "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). Due to the definiteness of Plaintiff's future plans to continue visiting the subject establishment, there exists a genuine threat of imminent future injury.

**Architectural Barriers**

20. On July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 42 U.S.C. § 12134(a); 28 C.F.R. Part 36.

21. Plaintiff has been to and throughout the facility from the parking lot to the entrance, to and throughout the store; throughout circulation paths and accessible routes, and service areas, paths of travel, toilet room and in particular but not limited to all of which is more specifically described below. Defendant's Shell Food Mart facility violates the ADA in particular but not limited to the following:

 (1) Shell Food Mart provides sales and service counters for able-bodied individuals to transact business and otherwise receive services that are provided at each counter but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Shell Food Mart:

   a. There is not at least one of each type of sales counter and service counter that is maintained in conformance with the

ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effects of rendering the counter, its associated elements, and services offered at the counter as unusable by disabled individuals.

**b.** There is not at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter and its associated elements are located adjacent to a walking surface complying with 403.

**c.** There is not  at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, a portion of the counter surface that is 30 inches long minimum and 36

inches high maximum with knee and toe space complying with 306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter.

**d.** There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effects of rendering the counter and its associated benefits and services as unusable by the disabled.

**e.** There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that accessible counter extends the same depth as the non-accessible portion of the counter.

**f.** There is not at least one of each type of sales counter and service counter that is maintained in operable condition with

the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in a readily accessible to and independently usable location at the accessible counter which has the discriminatory effects in practice of affording disabled individuals an unequal opportunity to independently transact business in the same manner as non-disabled individuals.

**g.** Shell Food Mart fails to maintain the accessible features of the sales and service counter that are required to be readily accessible to and usable by individuals with disabilities.

**(2)** The floor mats are not stable, firm, or otherwise secured to the floor.

**(3)** Shell Food Mart provides a toilet room for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Shell Food Mart:

**a.** The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that are required to be readily accessible to and

usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that is usable by the disabled, and maintaining all the required associated elements at the entrance door in a readily accessible to and usable by the disabled condition.

b. There is not at least one toilet room that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals, including, without limitation, the maneuvering clearance in the toilet room, and, among other, associate design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled.

c. The restroom fails to maintain at least one ADA accessible toilet room in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet room is arranged for either a left or a right-hand approach with the required maneuvering clearance maintained around the water

closet so that the maneuvering clear floor space around the water closet is not obstructed consequently rendering the compartment as unusable by the disabled.

**d.** The side wall grab bar fails to conform to the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42-inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a minimum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finish floor.

**e.** The rear wall grab bar fails to conform to the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36-inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finish floor.

**f.** Shell Food Mart fails to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities.

**(4)** Shell Food Mart provides a lavatory in the toilet room for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Shell Food Mart:

**a.** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements unusable by the disabled.

**b.** The lavatory sink fails to provide insulated piping under the sink and otherwise to protect against contact which has the discriminatory effect of rendering the lavatory sink and its associated elements unusable by the disabled.

c. The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by disabled individuals.

d. The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts measure the required height for unobstructed and/or obstructed reach ranges and do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper.

e. The soap dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts measure the required height for unobstructed and/or obstructed reach ranges and do not require the use of tight grasping, twisting, and/or pinching of the wrist.

f. The light switch fails to be maintained in a usable condition so that it measures the required height for unobstructed and/or obstructed reach ranges and does not require the use of tight grasping, twisting, and/or pinching of the wrist.

**(5)** Shell Food Mart provides a parking area with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible parking spaces  to the accessible entrance for non-able-bodied individuals which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Shell Food Mart's place of public accommodation which includes but is not limited to the following failures of Shell Food Mart:

    **a.** Shell Food Mart fails to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals.

    **b.** The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in

operable condition by conforming with the ADA Standards for Accessible Design so that the level parking spaces measure 96 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum and connect to an accessible route to the entrance of the establishment.

c. The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces' adjacent access aisle extends the full length of the parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled.

d. The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces' adjacent access aisles do not overlap the vehicular way.

e. The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in

operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the International Symbol of Accessibility that is mounted 60 inches minimum above the finish floor or ground surface measured to the bottom of the sign.

**f.** The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, do not obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled.

**(6)** Shell Food Mart provides a parking area with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible van parking spaces to the accessible entrance for non-able-bodied individuals which segregates and relegates individuals

with disabilities to inferior benefits of the goods and services provided at Shell Food Mart's place of public accommodation which includes but is not limited to the following failures of Shell Food Mart:

    **a.** Shell Food Mart fails to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to van parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals.

    **b.** The parking area fails to maintain the required amount of accessible van accessible parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking space measures 132 inches wide minimum with an adjoining compliant access aisle that measures 60 inches wide minimum, or, alternatively, a 96-inch wide space with an

adjoining 96-inch wide access aisle, and connects to an adjoining accessible route to the entrance of the establishment.

**c.** The parking area fails to maintain the required amount of accessible van parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking spaces' adjacent access aisle extends the full length of the parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled.

**d.** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces' adjacent access aisles do not overlap the vehicular way.

**e.** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage. including the International

Symbol of Accessibility that is mounted 60 inches minimum above the finish floor or ground surface measured to the bottom of the sign.

**f.** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, do not obstruct the required clear width of adjacent accessible routes and render the parking spaces unusable by the disabled.

22. To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

23. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs, and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

24. Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an order to alter the

discriminating facilities to make them readily accessible to and usable by individuals with disabilities to the extent required by the ADA, and closing the facilities until the requisite modifications are completed, and to further order the Defendant to modify its policies, practices, and procedures, to provide equal use of its facilities, services, and benefits to disabled individuals.

## COUNT TWO
## VIOLATION OF AMERICANS WITH DISABILITIES ACT, TITLE III
### 42 U.S.C. § 12182(b)(2)(A)(ii)
### *(Practices, procedures, and policies denying equal benefits)*

### ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers

25. Plaintiff realleges and reincorporates all the allegations in paragraphs 1 through 24 as fully stated herein.

26. Title III of the ADA provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of Title III." 42 U.S.C. § 12182(a)(1).

27. Title III of the ADA specifically makes it unlawful to provide individuals with disabilities with an unequal benefit and to relegate individuals with disabilities to a different or separate benefit. 42 U.S.C. § 12182(b)(1)(A)(ii), (iii); 28 C.F.R. §§ 36.202(b), (c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28

C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided segregated accommodations compared to non-disabled individuals; thus, relegating persons who use wheelchairs "to the status of second-class citizens." *See* Title III ADA Regulations of 1991, pt. 36, App. B, at 631—33, 651 (2000) (current version at 28 C.F.R. §§ 36.308, 36.203).

28. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

**29.** To address this broad range of discrimination in the context of public accommodations, Congress enacted Title III of the ADA, which provides in part, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182.

**30.** By its clear text, Title III of the ADA requires a public accommodation to provide individuals with disabilities more than simple physical access. Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with Title III of the ADA. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. § 12101(a)(5); *see* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35—36 (1990) (stating "lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); *see also* H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible

and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation").

31. For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the place of public accommodation to the public. 42 U.S.C. § 12182. Thus, a place of public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). Further, the Eleventh Circuit held that:

> A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers, that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and intangible barriers, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges.

*Rendon v. Valleycrest Prod., Ltd.,* 294 F.3d 1279 (11th Cir. 2002).

**Defendant's Failed Practices and Lack of Policies are Discriminatory**

**32.** Further, discrimination includes:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

42 U.S.C. § 12182(b)(2)(A)(ii).

**33.** Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled. Similarly, a place of public accommodation must not have a policy or practice that "has a discriminatory effect in practice" of preventing disabled individuals from realizing the full and equal enjoyment of the goods and services the public accommodation offers to potential customers. *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565 (D. Vt. 2015).

**34.** As detailed below, Defendant has failed to make reasonable modifications in their policies, practices, and procedures that are necessary to afford their goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility.

By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated or otherwise treated Plaintiff differently than other individuals who are not disabled. Defendant has discriminated against Plaintiff. 42 U.S.C. § 12182(b)(2)(A). Defendant will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

35. Defendant either has no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendant has failed to create, adopt, and implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

36. Defendant's use of its Shell Food Mart, and its practices at the store, create barriers, and in so doing, denies Plaintiff the full and equal enjoyment of the goods and services at Shell Food Mart. These practices include:

   (1) Defendant fails to provide firm and stable floor mats throughout the store, meaning Plaintiff is unable to safely move through the

establishment as non-disabled individuals are able to do. Accordingly, he cannot fully and equally use the store as the non-disabled can;

(2) Defendant makes the sales and service counter inaccessible for use by the disabled by failing to provide a 36-inch maximum counter with a clear of clutter and merchandise surface, with either a parallel or a forward approach to the counter, an accessible point of sale machine for Plaintiff to be able to independently transact business at the counter. Moreover, Defendant provides an inaccessible counter for Plaintiff positioned next to the ice cream refrigerator, with no point of sale machine available for Plaintiff's use, separate and away from the sales and service counter available for the general non-disabled customers, which segregates Plaintiff in violation of the ADA, which means Plaintiff cannot fully and equally use the counter to receive services and check out in the way the non-disabled do, because the non-disabled have counters they can use to checkout;

(3) Point of sale machines are located so as to be inaccessible, denying Plaintiff the ability to equally use those machines as the non-disabled, who can independently use the point of sale

machines to pay for their purchases, though he cannot;

(4) Defendant fails to provide informational signage throughout the store that displays the International Symbol of Accessibility and otherwise informs and directs disabled individuals to the ADA accessible elements within the store, which means that Defendant does not even claim to have any ADA accessible elements within the store and that Plaintiff is forced to use trial and error to decide which elements within the store he can use, if he can use any at all, unlike the non-disabled who can freely use all of the elements within the store;

(5) Defendant fails to provide accessible restroom door hardware not requiring tight grasping, twisting or pinching of the wrist, meaning Plaintiff cannot access the restroom and its associated elements with the same level of convenience non-disabled individuals can;

(6) Defendant fails to provide sufficient maneuvering space at the door, around the water closet and the lavatory sink, meaning Plaintiff cannot independently, safely and with the same level of convenience use these elements as non-disabled individuals can;

(7) Defendant fails to provide a properly installed water closet and its associated elements, meaning Plaintiff is risking falling off the water closet or otherwise is unable to use it independently, safely and with the same level of convenience as non-disabled customers can;

(8) Defendant fails to provide sufficient parking spaces, including van parking spaces, on the accessible route not overlapping vehicular way to Shell Food Mart, properly marked parking spaces and aisles, properly installed International Symbol of Accessibility, clear floor free of obstructions in the aisles, landings and ramp, meaning Plaintiff is using trial and error in finding the accessible parking space, as well as he is unable independently and safely move from the parking spot to the facility;

(9) Defendant's practices are conducted without regard to disabled individuals.

37. The continuing architectural barriers and the failure to provide full and equal use of the facility establish that Defendant has no policies, practices, and procedures or else it failed to create, implement, and maintain policies and procedures to ensure individuals with disabilities

are able to have the same experience at their store as individuals without disabilities and, in particular, the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of Shell Food Mart, as described above in detail. 42 U.S.C. § 12182(b)(1)(A).

38. The continuing architectural barriers and the failure to provide full and equal use of the facility establish that Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

39. To date, the Defendant's discriminating policies, practices and procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

40. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. Plaintiff hereby demands that Defendant both creates and adopts a corporate practice and policy that Defendant (1) will fully comply with the Title III of the ADA and all its implementing regulations so that architectural barriers identified above are permanently removed from

Defendant's retail store consistent with the ADA; (2) Defendant will provide the disabled, including those with mobility limitations, full and equal use and enjoyment of the Defendant's retail store; (3) Defendant will modify its practice of making the ADA Title III architectural barrier remediations only upon demand by the disabled.

41. As pled above, Defendant "operates" and "owns" Shell Food Mart store and is, therefore, responsible for creating, implementing, and maintaining policies, practices, and procedures, as alleged above. *See* 42 U.S.C. § 12182.

42. The ADA is over twenty-five (25) years old. Defendant knows it must comply with the Title III of the ADA, which requires modifications in policies, practices, and procedures to comply with it, as pled above. 42 U.S.C. § 12182(b)(2)(A)(ii).

43. By this Complaint, Plaintiff provides sufficient notice of his demands for an alteration in Defendant's policies, practices, and procedures.

44. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs, and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

**45.** Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *(Denial of Full and Equal Enjoyment)*

**46.** Plaintiff realleges and reincorporates paragraphs 1 through 45 as fully stated herein.

**47.** 42 U.S.C. § 12182(a) provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

**48.** Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

**49.** Congress also found that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and

practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities, 42 U.S.C. § 12101(a)(5); "the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals." 42 U.S.C. § 12101(a)(7). Congress found that,

> [T]he continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(8).

50. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. §§ 12101(b)(1), (2).

51. The ADA provides, *inter alia*, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial

of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

52.  The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability . . . with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

53.  Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and omissions alleged herein are in violation of the ADA, and the regulations promulgated thereunder. 42 U.S.C. §§ 12101, *et seq*.

**54.** To address this broad range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. § 12101(a)(5); *see* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35—36 (1990) (stating "lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); *see also* H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation").

**55.** For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public

accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

56. The keystone for this analysis is that defendants must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. *Spector v. Norwegian Cruise Line Ltd.,* 125 S. Ct. 2169 (2005); *see Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012).

57. Plaintiff was denied full and equal access to the Defendant's store, which offers various types of beverages, snacks, gum and fast-food; as well as the ATM conveniently located at the store. More specifically, Plaintiff desires to be afforded the same level of service that is offered to non-disabled individuals and which Defendant has failed to provide to Plaintiff as follows: Defendant failed to provide an accessible route from the parking area to the store's entrance for disabled individuals which means that unlike the non-disabled, the disabled must struggle just to get throughout the parking lot to the store independently, if they can make it at all; Defendant failed to provide Plaintiff that same experience that non-disabled individuals have when shopping at Shell Food Mart

by denying an accessible sales and service counters and their associated benefits to transact business at the counter, while the non-disabled can independently access the counters and the services provided at the counters; Defendant failed to maintain the accessible signage of Shell Food Mart so that the disabled, unlike the non-disabled, do not even know what route and what facilities are usable by individuals with disabilities; Defendant's failure to identify by signage what is accessible and what is not accessible at the facility creates an inferior experience for the disabled, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; Defendant failed to maintain restroom readily accessible to and usable by Plaintiff and other disabled individuals; and all the foregoing failures by the Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have when shopping at Shell Food Mart.

58. In its Preamble to the Title III regulation, the Department of Justice recognized that mobility impaired persons, including persons in wheelchairs, should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ

further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, § 36.203 (1991).

59. The ADA specifically makes it unlawful to provide individuals with disabilities with an unequal benefit, and to relegate individuals with disabilities to a different or separate benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii), (iii); 28 C.F.R. §§ 36.202(b), (c). Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided inferior seating and segregated accommodations compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631—33, 651 (2000) (discussing §§ 36.308, 36.203).

60. Thus, Defendant's use of the accessible features of Shell Food Mart constitutes statutory discrimination in violation of the ADA, because

Defendant has segregated and separated the disabled from the non-disabled individuals. "The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected." H.R. Rep. No. 101—485(III), at 50, 1990 U.S.C.C.A.N. at 473. The ADA provides a broad mandate to eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) (discussing H.R. Rep. No. 101—485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332).

61. Defendant discriminated against Plaintiff by denying Plaintiff the full and equal enjoyment and use of the goods, services, facilities, privileges and accommodations of the facilities during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations" of Shell Food Mart.

62. Defendant's conduct and Defendant's unequal treatment of Plaintiff constitutes continuous violations of the ADA, and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally.

63. Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitutes continuous discrimination, and absent a Court ordered injunction, Defendant will continue to fail to maintain the required accessible features at Defendant's facilities. 28 C.F.R. § 36.211(a).

64. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs, and expenses paid by the Defendant. 42 U.S.C. § 12205.

65. Further, this Court is authorized to enjoin these illegal acts of Defendant. 42 U.S.C. § 12188.

## COUNT FOUR
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12183(A)(1)
## (Failure to design and construct facilities for ADA compliance)

66. Plaintiff realleges and reincorporates paragraphs 1 through 65 as fully stated herein.

67. 42 U.S.C. § 12183(a)(1) provides,

> [Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can

demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.

68. Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination . . . continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." *Id.* § 12101(a)(5). In its Preamble to the Title III regulation, the Department of Justice recognized that persons in wheelchairs should have equal opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as other non-disabled individuals do. The Department of Justice further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, § 36.203.

69. To eliminate such segregation, Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities." This very requirement is intended to enable persons with

disabilities "to get to, enter and use a facility." H.R. Rep. No. 101—485(III), at 499—500 (1990). It requires "a high degree of convenient accessibility," as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is to ensure that the service offered to persons with disabilities is equal to the service offered to others." *Id*.

70. As the legislative history makes clear, the ADA is geared to the future, the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, while requiring all new construction to be accessible. H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

71. To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design (hereinafter referred to as "Standards") are incorporated into the Department of Justice's regulation implementing Title III of the ADA, 28 C.F.R. Part 36, App.

72. The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facilities, from parking areas,

interior walkways and entrances, common areas, interior stairways and elevators, restrooms, dressing rooms and sales and service areas.

73. Defendant, as the "operator" of the Shell Food Mart store and the "owner" of the tenant space, is directly involved in the designing and/or construction of its store in this litigation for first occupancy after July 2012.

74. Defendant was and is required to design and construct the Shell Food Mart to be "readily accessible to and usable by individuals with disabilities." Defendant violated the statute by failing to design and construct its retail store to be readily accessible to and usable by individuals with disabilities including individuals who use mobility aids. Defendant further violated the statute by failing to design and construct its retail stores in compliance with the ADA during planned alterations as described throughout this Complaint.

75. According to Defendant's own publicly available information, Defendant choses to design its store in a way that is not Title III ADA compliant whatsoever. Defendant's systematic design of its store fails to afford disabled individuals equal shopping experience that is afforded to individuals without disabilities.

**76.** To date, Defendant's discriminating actions continue.

**77.** Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs, and expenses paid by the Defendant. 42 U.S.C. § 12205.

**78.** This Court is authorized to enjoin these illegal actions by Defendant. 42 U.S.C. § 12188.

**WHEREFORE**, based on the foregoing, Plaintiff, Valiollah Gholamkhas, demands judgment against the Defendant on Counts One through Four and requests the following injunctive and declaratory relief:

**(1)** That the Court declares that the owned property and operated business Shell Food Mart by the Defendant as well as all Defendant's illegal actions described herein violate the ADA, as more particularly described above;

**(2)** That the Court enters an Order enjoining the Defendant to alter the facilities described above to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. §§ 12182(b)(2)(A)(iv) and (v) and their implementing regulations, as stated in Count One;

**(3)** That the Court enters an Order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future;

**(4)** That the Court enters an Order directing the Defendant to provide Plaintiff full and equal access both to Shell Food Mart experience and to the use of the Defendant's retail store, and further order Defendant to maintain the required accessible features at the retail store in the location described above so that Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

**(5)** That the Court enters an Order directing the Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

**(6)** That the Court enjoins Defendant to remediate Shell Food Mart retail store to the proper level of accessibility required for the design and construction of the facilities for first occupancy, as stated in Count Four;

**(7)** That the Court awards reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff;

**(8)** That the Court awards such other, further, and different relief to Plaintiff as this Court deems necessary, just, and proper.

Respectfully Submitted this 14th day of February 2019 by:

>*/s/ Anna Zhuromskaya*
>ANNA ZHUROMSKAYA, ESQ.
>Attorney for Plaintiff
>ALA. BAR NO.: 1646T80F
>The ADA Group, LLC
>4001 Carmichael Road, Suite 570
>Montgomery, AL 36106
>334.819.4030 ph.
>334.819.4032 fax
>az@ada-firm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I have filed with the Clerk of Court the aforementioned

Complaint for service of process by USPS mail or electronic mail, postage prepaid

and properly addressed this 14th day of February 2019 to the following:


**MAT, INC.**
Attn: Registered Agent
2599 Sparkman Dr
Huntsville, AL 35805


*/s/ Anna Zhuromskaya*
ANNA ZHUROMSKAYA, ESQ.
Attorney for Plaintiff
ALA. BAR NO.: 1646T80F
The ADA Group, LLC
4001 Carmichael Road, Suite 570
Montgomery, AL 36106
334.819.4030 ph.
334.819.4032 fax
az@ada-firm.com